COURT OF APPEALS OF VIRGINIA

Present:   Judges Frank, McCullough and Senior Judge Willis
Argued by teleconference


TERRY LYNN MAY

                                                MEMORANDUM OPINION[*] BY
v.        Record No. 1439-11-3                  JUDGE STEPHEN R. McCULLOUGH
                                                        APRIL 10, 2012
TOWN OF BRIDGEWATER AND
  VIRGINIA MUNICIPAL GROUP SELF-INSURANCE
  ASSOCIATION/VML INSURANCE PROGRAMS


            FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

          Craig A. Brown (A. Thomas Lane, Jr.; A. Thomas Lane, Jr., &
          Associate, on brief), for appellant.

          Ralph L. Whitt, Jr. (Corey R. Pollard; Whitt & Del Bueno, P.C., on
          brief), for appellees.


        Terry Lynn May appeals a decision of the commission denying his claim for benefits.  He

argues on appeal that the commission erred in holding that his injury did not arise out of his

employment.  We disagree and affirm.

                                        BACKGROUND

        The facts are straightforward and essentially undisputed.  May, the claimant, was employed

by the Town of Bridgewater as a trash collector.  On August 19, 2008, he was riding on the back of

a trash truck.  When the truck came to a full stop, he stepped down backwards off the truck, placing

his left foot on the ground while his right foot initially remained on the step.  His left knee gave a

loud pop, he felt a severe pain, and he fell to the ground.  The step is 22-1/4 inches high, which is

higher than a "normal" eight-inch step.  May's hand was on a grab bar, absorbing some of his body

_____

        [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

weight. His right foot was still on the step, with the majority of his weight resting on his left foot. The claimant, who is six feet tall and weighs 240 pounds, testified that stepping down was not strenuous or difficult. In stepping down, he did not twist or rotate his left leg or knee. The pavement was not uneven, and there were no rocks or gravel. The surface was "nice and level."

Thomas S. Weber, a medical doctor specializing in sports medicine, testified on behalf of the claimant. He diagnosed the claimant with a torn left knee meniscus.[1] In several instances, contrary to the account provided by the claimant, Dr. Weber wrote that the injury was caused by the claimant "twisting" or "rotat[ing]" his knee. Dr. Weber explained that stepping on stairs increases pressure on the knee. That is true of any type of stair. He "surmise[d]" that a higher stair would place more pressure than climbing average stairs. He further noted that it could "make a difference" to the pressure placed on the knee if some of the body weight was borne by the arms rather than the foot. Dr. Weber acknowledged that the force and pressure would be reduced by holding on to the grab bar, but he said he did not know by how much. He repeatedly acknowledged that it would be speculative to determine the reduction in pressure that would be attributable to the grab bar. He testified that, when compared to walking, stepping up would place significantly more pressure on the knee than stepping down. Dr. Weber noted that tears of the meniscus can occur while stepping off of an ordinary eight-inch step.

The deputy commissioner found in favor of the claimant, finding that the "unusual height" of the step caused May to sustain a compensable injury. The employer appealed to the commission, which reversed the award of benefits.

ANALYSIS

On appeal from a decision of the Workers' Compensation Commission, the evidence and all reasonable inferences that may be drawn from that evidence are viewed in the light most favorable

---

[1] Dr. Weber also found that the claimant had some osteoarthritis in his left knee.

to the party prevailing below.  Clinchfield Coal Co. v. Reed, 40 Va. App. 69, 72, 577 S.E.2d 538, 539 (2003).

"The Act has always required the claimant to carry the burden of proving, by a preponderance of the evidence, (1) an 'injury by accident' or occupational disease, (2) arising out of, and (3) in the course of, the employment."  Morris v. Morris, 238 Va. 578, 584, 358 S.E.2d 858, 862 (1989) (citations omitted).  This Court reviews *de novo* the question of whether a work-related injury arose out of a claimant's employment.  Blaustein v. Mitre Corp., 36 Va. App. 344, 348, 550 S.E.2d 336, 338 (2001).

> [A]n injury does not arise out of the employment merely because it occurred during the performance of some employment duty if the act performed by the employee is not a causative hazard of the employment.  Simple acts of walking, bending, or turning, without any other contributing environmental factors, are not risks of employment.

Haley v. Springs Global U.S., Inc., 54 Va. App. 607, 613, 681 S.E.2d 62, 65 (2009) (citations and internal quotation marks omitted).  In this vein, an injury sustained while descending an ordinary flight of stairs does not "arise under" the employment.  See Cnty. of Chesterfield v. Johnson, 237 Va. 180, 186, 376 S.E.2d 73, 76 (1989).

May places a heavy emphasis on Reserve Life Insurance Co. v. Hosey, 208 Va. 568, 159 S.E.2d 633 (1968).  In that case, the Supreme Court of Virginia affirmed an award of benefits to a canvasser who injured her knee while ascending a flight of rock stairs composed of steps that were "'just a little bit higher than usual for a step.'"  Id. at 569, 159 S.E.2d at 634.  The claimant offered evidence from two doctors that established a causal link between the claimant's injury and the stairs.  Id. at 569-70, 159 S.E.2d at 634-35.  The Court subsequently made clear that "[t]he facts in no two cases are identical and to a certain extent each case must stand alone."  Richmond Mem. Hosp. v. Crane, 222 Va. 283, 286, 278 S.E.2d 877, 879 (1981) (citation omitted).  Hosey does not stand for a rule of automatic compensation every time a worker falls after stepping onto a stair of unusual

height.[2] Therefore, the question before us is whether, on the particular facts of this case, the claimant met his burden of establishing that his injury arose out of his employment. Furthermore, in Hosey, the commission awarded benefits, placing the claimant in a favorable position with respect to appellate review. Hosey, 208 Va. at 572, 159 S.E.2d at 636. Here, the commission ruled against the claimant.

The employer argues that our decision in Haley is controlling. We agree. In Haley, the claimant was injured while stepping into the cab of a truck. He had placed his hand on a handrail and pulled himself up. As he placed his foot on a stair, his leg experienced a spasm and he lost all strength in his left leg. 54 Va. App. at 610, 681 S.E.2d at 64. He was later diagnosed with a ruptured tendon. The step in question, at sixteen inches off the ground, was slightly larger than an ordinary step. In concluding that the injury did not arise under the claimant's employment, this Court noted that the medical evidence offered by the claimant indicated when the rupture occurred, not why it occurred. Id. at 610-11, 681 S.E.2d at 64. The physician the claimant relied upon "did not opine, nor did any other witness, that this injury was the result of the particular condition of the steps used by the claimant at his workplace, as opposed to the normal conditions found outside of the workplace." Id. at 614, 681 S.E.2d at 66. Moreover, the claimant testified that going up and down these steps did not require any abnormal exertion – "to him, these steps were indistinguishable from the steps that he normally used outside of work." Id. at 613, 681 S.E.2d at 65.

---

[2] This Court often has had occasion to address cases involving claims stemming from falls involving stairs. See generally Hercules, Inc. v. Stump, 2 Va. App. 77, 341 S.E.2d 394 (1986); Southside Va. Training Ctr. v. Shell, 20 Va. App. 199, 455 S.E.2d 761 (1995); Marion Correctional Treatment Ctr. v. Henderson, 20 Va. App. 477, 458 S.E.2d 301 (1995); Cnty. of Buchanan Sch. Bd. v. Horton, 35 Va. App. 26, 542 S.E.2d 783 (2001); Grayson Sch. Bd. v. Cornett, 39 Va. App. 279, 572 S.E.2d 505 (2002).

- 4 -

Like the claimant in Haley, May testified that stepping down from the truck was not strenuous or difficult. The truck was not moving when he stepped down, and the surface on which he landed was completely level. Also, like the claimant in Haley, the medical evidence tendered by May was inconclusive. To be sure, Dr. Weber explained that, in the abstract, stepping down from a higher step will produce more pressure on the knee than stepping down from an ordinary step. He also testified that the combination of the height of the step and the manner in which the claimant stepped down caused the injury. This conclusion was premised on the understanding that the claimant placed "all the pressure" on the injured leg. Dr. Weber did not have an understanding of the fact that the claimant was holding on to anything when he stepped down. In this instance, as the claimant acknowledged, he used the grab bar while stepping down from the truck. The claimant further acknowledged that at least some of his weight would have been absorbed through the grab bar. This action reduced the amount of pressure placed on the knee. Dr. Weber stated that it would be speculative to assess how much weight would have rested on the claimant's knee and how much would have been absorbed by the grab bar. Dr. Weber acknowledged that meniscal tears can occur when stepping down an ordinary step. He declined to speculate how much additional weight would have been placed on the claimant's knee relative to an ordinary step in light of the claimant's use of the grab bar. Moreover, in some of his reports, he ascribed the injury to a twisting motion, something the claimant denied. Therefore, like the medical evidence in Haley, and unlike the medical evidence offered by the claimant in Hosey, the medical evidence here did not establish anything more than a speculative link between the injury and the height of the step. Further distinguishing both Haley and Hosey is the fact that the claimant here was stepping down, rather than stepping up. Dr. Weber testified that the pressure is "probably more" stepping up than stepping down. In short, viewing the evidence as we must through the standard of review leads us to conclude that, as in Haley, the medical evidence was inconclusive.

May's principal response to <u>Haley</u> is to criticize the reasoning of the decision. Under the interpanel accord doctrine, however, the "decision of one panel 'becomes a predicate for application of the doctrine of *stare decisis*' and cannot be overruled except by the Court of Appeals sitting *en banc* or by the Virginia Supreme Court." <u>Clinchfield Coal Co. v. Reed</u>, 40 Va. App. 69, 73, 577 S.E.2d 538, 540 (2003) (citation omitted); <u>see also</u> <u>Commonwealth v. Burns</u>, 240 Va. 171, 174, 395 S.E.2d 456, 457 (1990).

The claimant also seeks to distinguish <u>Haley</u>, arguing that the medical evidence offered in that case was more tentative than the testimony of Dr. Weber in the present case. We find this distinction unavailing for the reasons noted above. He also notes that Dr. Weber stated that the injury to the knee was caused not only by the height of the step but also the "manner in which Mr. May stepped." As noted above, Dr. Weber's incorrect presupposition was that "the manner in which Mr. May stepped" was that he "put[] all the pressure on one leg." Consequently, the medical evidence, as in <u>Haley</u>, was inconclusive.

### CONCLUSION

For the foregoing reasons, we affirm the decision of the commission.

<u>Affirmed.</u>